## 28216. AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, et al. v. BOND.

DECIDED APRIL 25, 1940.

*Neely, Marshall & Greene,* for plaintiff in error.

*L. D. Moore, Maurice C. Thomas,* contra.

SUTTON, J. On March 22, 1937, Lucius Bond, the claimant, sustained certain injuries as the result of an accident arising out of and in the course of his employment with Georgia Kaolin Company. While at work he fell from a ladder, struck the back of his neck against an iron rod, and fractured his fifth cervical vertebra. Agreements for the payment of compensation were duly entered into, and he was paid from March 29, 1937, through October 12, 1937, when payments were discontinued because of his refusal to accept employment at light work offered by his former employer. Thereafter he filed with the Industrial Board an application for additional compensation, and a hearing was had before a director on January 31, 1938, who, on March 9, 1938, rendered an award denying compensation because of the refusal of the claimant to accept work suitable to his condition. The claimant appealed from this award directly to the superior court; and on May 11, 1939, judgment affirming the award of the director was entered by the court. This judgment was not appealed from; but on August 5, 1938, the claimant applied to the Industrial Board for a further hearing, claiming a change in his condition. A hearing on this application was held on December 13, 1918, by Deputy Director Max E. Land, who, on January 30, 1939, rendered an award in which he found that there had been a change in the claimant's condition since the last award, that he was justified in refusing to accept the employment which Georgia Kaolin Company had continuously offered him, and that he was entitled to compensation as for a total disability beginning as of the date of the accident and continuing for 350 weeks, less the period for which he had been paid compensation. The employer and the insurance carrier filed an appeal to the board. On March 4, 1939, the board rendered an

award in which it found as a fact that there had been no change in claimant's condition since the previous award on March 9, 1938, that he was capable of performing the work which had been offered him, and that he had unreasonably refused to accept such employment, and during the continuance of such refusal was not entitled to compensation. The claimant appealed to the superior court, and on November 17, 1939, the judge of said court rendered judgment overruling and vacating the award of the board and affirming the award of the deputy director. The exception is to that judgment, and it is conceded by both sides that the only question involved is whether or not there had been a change in the claimant's condition since the award of March 9, 1938.

On the review of an award by a director of the Industrial Board the board acts as a fact-finding body and may reverse the award of a single director, although there be some evidence to support the finding of the director. In reviewing an award by the board denying compensation, this court must affirm the award of the board if the evidence favorable to the employer is sufficient to authorize the award denying compensation. *Austin* v. *General Accident &c. Cor.,* 56 *Ga. App.* 481 (193 S. E. 86) ; *Merry Brick & Tile Co.* v. *Holmes,* 57 *Ga. App.* 281 (195 S. E. 223) ; *Glens Falls Indemnity Co.* v. *Sockwell,* 58 *Ga. App.* 111, 114 (197 S. E. 647). With respect to whether or not there had been a change in the condition of the claimant which was traceable to the original injury, it appears, that shortly after an appeal was taken from the previous award denying compensation, the claimant undertook to perform the work offered by the employer; that about May 4, 1938, while so engaged he fell to the floor, apparently from a dizzy spell, became blind, and temporarily lost consciousness; that he was sent to a hospital for treatment and remained there for several days; that during that time he complained of blindness, and was examined and treated by Dr. C. K. McLaughlin; that he improved while in the hospital, and on May 9, 1938, had a vision of at least 20/50 in the right eye and 20/40 in the left eye, about 75 or 80 per cent. vision.

There was testimony on behalf of the claimant, that he had a broken neck as a result of his injury, before which time he had always been healthy and strong, and was a willing and industrious worker, but now at home could do only such light work as carrying a bucket of water, and could not stoop and pick up anything, and

sometimes his jaws would lock, and at times his body would become stiff while he was sitting at a table. An orthopedic surgeon testified, that the claimant was totally disabled, could not safely attempt to pick up things or do the work offered him; that if he stooped he might flex his head and break his neck in such a way as to cause his death; that it would even be dangerous for him to walk the streets; that without the aid of an x-ray examination he could not tell whether or not the bones of his neck were becoming absorbed, but if absorption took place it would be likely to produce meningitis, or the bones give way and the head fall suddenly and the neck be broken, and if he attempted to work he might suddenly flex his head down and snap a vertebra. He testified, however, that he did not think that there had been any change in the claimant's condition since his testimony which was given in the hearing on the previous application for compensation, but that he then also thought the claimant was totally disabled and should not attempt to work. Two other doctors who testified in the previous hearing, when compensation was denied because of the refusal of the claimant to work, testified to the effect that the claimant's condition had not changed since the previous award, and that there was no causal connection between the original injury and the spell that the claimant suffered on May 4, 1938, while at work. One of these, an eye specialist, testified that there was no disability as to the claimant's eyes, and no condition which would prevent him from performing the work offered by the employer. The other doctor testified that in his opinion the condition of the claimant, as to inability to work, was subjective or neurotic, encouraged by his father who was taking care of the claimant and his family; and that in fact he was able to do light selective work, and could do so if he would properly attempt to do it, although it would be awkward at first. The plaintiff admitted that he drove his father's automobile to the hearing, and that he was accustomed to drive it at other times.

The above evidence, while conflicting, was sufficient to authorize the finding of the board and their award denying compensation, on the ground that there had been no change in the condition of the claimant since the previous award, and that he was able to perform the work offered by the employer. Consequently the judge of the superior court was without authority to disturb the board's

finding, and erred in rendering judgment vacating that finding and sustaining the award of the deputy director.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*